## 50782. FIRST NATIONAL BANK OF ATLANTA v. RAYLE.

STOLZ, Judge.

The litigation before us arises out of the construction of a medical partnership agreement between Drs. Albert A. Rayle, Jr., and J. Frank Walker (now deceased). The pertinent portions of the agreement provide:

"*Article I. General Provisions.* Section B. *Parties.* Albert A. Rayle, Jr. and J. Frank Walker constitute the partners of the firm.

"*Article IV. Meetings and Voting of the Partners.* Meetings of the partners shall be held at such times and places as are necessary for the purposes of the firm's business upon waiver of notice thereof or upon written notice at least two (2) days in advance signed by any one of the partners, signifying the hour and the purpose of the meeting. *All matter affecting the partnership shall be decided by a unanimous vote of all of the partners except as otherwise herein specifically provided.* [Emphasis supplied.]

"*Article V.* Section B. *Death or Permanent Disability of a Partner.*

"1. The death of a partner shall terminate all of his interest in the partnership, its properties, and assets. The continuing firm shall pay in cash to his estate the following amounts to be paid at the times indicated: . . .

"2. Permanent Disability of a partner to practice radiology shall, *on the date of the determination of his permanent disability,* terminate his interest in ·the partnership and his percentage of participation in profits and losses of the firm as a partner. The determination that a partner is permanently disabled shall be made upon evidence of such permanent disability by independent

medical advice. Upon such determination of permanent disability, the following amounts shall be paid at the times indicated: . . . [Emphasis supplied.]

"His death before all such payments have been made shall not interrupt the continued payments by the continuing firm; but no further sums shall be owing by the firm because of such death except to continue the payments made pursuant to this paragraph 2.

"*Article IX. Termination and Liquidation of Firm.* Section A. *Termination by Voluntary Action or Otherwise.* The partnership may be terminated at any time by the unanimous vote of the partners. . . Section C. *Insurance Policies.* Upon the termination of the firm, each partner shall have the right to take over his respective health, accident, disability, and life insurance policies, or any of them, and an equitable adjustment shall be made with respect to any prepaid premiums or cash surrender value thereof, and each partner agrees to execute any papers necessary to effectuate such result."

This action is by the executor of the estate of Dr. J. Frank Walker, deceased, for actual and punitive damages and attorney fees against Dr. Rayle. Briefly, the record shows that Dr. Walker died on October 6, 1973. Prior to that date and since 1950, Dr. Walker and Dr. Rayle had been partners in the practice of medicine specializing in radiology. For many years they worked together under a verbal agreement. On October 14, 1972, they operated under a written contract, the pertinent portions of which have been set out previously. Dr. Walker became ill in 1972. He did no work for the partnership after June 1, 1973.

The plaintiff bank appeals from the judgment of the trial court denying its motion for summary judgment.

1. The issue before us is whether the partnership had been terminated *by a determination* of Dr. Walker's permanent disability prior to his death.

There is no ambiguity in the clauses to the partnership agreement. Moreover, the record conclusively shows that there had been *no determination of Dr. Walker's permanent disability under the partnership agreement prior to his death.* Thus, the record shows that in the period from June 1, 1973, when Dr.

Walker ceased work, until his death on October 6, 1973, Dr. Walker received $3,000 in payments from the partnership. The record does not show the basis for this figure; perhaps it was pursuant to the temporary disability provisions of the contract. The contract's "permanent disability" clause providing for monthly payments of $416.67 ($15,000 in 36 equal monthly instalments) clearly would not apply to the $3,000 paid Dr. Walker.

Further, Dr. Rayle testified on deposition that on or about September 5, 1973, he delivered a "Retirement Agreement" (R. 96) to Dr. Walker for his approval and signature. Dr. Walker kept the document for study, but did not execute it prior to his death. The "Retirement Agreement" recites that since June, 1973, for reasons of health, J. Frank Walker has been unable to provide professional services of the partnership because of permanent disability, *and the partners are now desirous of recognizing such permanent disability in accordance with the provisions of the 1967 draft of the Articles of Partnership.* In paragraph 3 of the "Retirement Agreement" it is stated that Dr. Walker recognized that his permanent disability terminates his interest in the partnership (R. 98). As previously noted, Article IV of the partnership agreement required all matters affecting the partnership be determined by unanimous vote except as specifically provided therein. "The determination that a partner is permanently disabled shall be made upon evidence of such permanent disability by independent medical advice." Article V, section B. (2) partnership agreement. This provision would apply *only* to situations where the partners have been unable to agree as to permanent disability. Obviously, if the partners agreed that one was permanently disabled there would be no need for an independent medical determination. Moreover, such medical determination is not supplied by opinions obtained *after* Dr. Walker's death, even though such opinions may have been formed several months prior thereto. The independent medical determination of permanent disability, in order to be operative, had to be made pursuant to the invoking of the appropriate provision of the partnership agreement and not merely an

expression of individual medical doctors' private opinions.

In the case before us, the controlling point is not *the fact* of Dr. Walker's permanent disability immediately prior to his death, but the uncontroverted fact that there had been no *determination of such permanent disability pursuant to the partnership agreement prior to his death.*

We therefore reverse the trial court and direct that judgment be entered in favor of the plaintiff for the death benefits from the $50,000 insurance policy, Dr. Walker's interest in his capital account, and his interest in the partnership profits as of October 6, 1973, plus statutory interest on the amount of said principal from said date.

There being issues of law and fact as to the plaintiff's entitlement to "punitive" damages and attorney fees, the trial judge correctly denied the plaintiff's motion for summary judgment as to these matters.

*Judgment affirmed in part; reversed in part. Bell, C. J., Pannell, P. J., Clark, Webb and Marshall, JJ., concur. Deen, P. J., Quillian and Evans, JJ., dissent.*

ARGUED JUNE 30, 1975 — DECIDED DECEMBER 2, 1975 — REHEARING DENIED DECEMBER 19, 1975 — ▮▮▮▮▮▮▮

*Huie, Brown & Ide, Terrence Lee Croft, W. Stell Huie, Steven B. Kite,* for appellant.

*Westmoreland, Hall, McGee & Warner, P. Joseph McGee,* for appellee.

DEEN, Presiding Judge, dissenting.

The issue in this case involves the construction and interpretation of a partnership agreement in effect between appellant's deceased, Dr. Walker, and appellee. The agreement provides that all matters affecting the partnership shall be decided by a unanimous vote of all of the partners *except as otherwise specifically provided.* The agreement further provided that the partnership would be terminated by: (1) the death of a partner; (2) the permanent disability of a partner on the date of the determination of his permanent disability; (3) six months of temporary disability, the end of that period being

considered the day of determination of permanent disability. The plaintiff-appellant moved for summary judgment on the basis that construction of the contract required a finding that there could be no determination of permanent disability until the six-month period of temporary disability had run. I believe that as a matter of contract construction the agreement provided for three methods of terminating the partnership without unanimous agreement of the parties (death, permanent disability and temporary disability for six months) and not two as proposed by the appellant (death and permanent disability after six months of temporary disability). Apparently the majority agrees with this construction for they nowhere discuss the temporary disability provisions which were the basis of the appellant's motion for summary judgment. The only question on this appeal is whether the trial judge was correct in his construction of the contract, holding that permanent disability is a separate method of termination under the agreement without the six-month period of temporary disability. I believe this construction to be correct and that summary judgment was properly denied as to the appellant's construction.

The majority would accept my construction and go further to decide as a matter of law that there had been no determination of Dr. Walker's permanent disability. This I believe is erroneous. Having construed the contract the majority would go further and decide what the parties intended by their agreement: They intended that the $3,000 received by Dr. Walker between June and October of 1973 not to be permanent disability payments; they intended that independent medical advice determine permanent disability only if they could not agree among themselves; they intended that permanent disability not be determined by independent medical advice when such a determination is based upon previously formed opinions. Having construed the contract to provide for three, and not two, methods of termination the question of what the parties intended in their agreement is an issue of fact for the jury under the evidence in this case. *Pinkerton & Laws v. Atlantis Realty Co.,* 128 Ga. App. 662, 666 (197 SE2d 749). The questions of how the parties intended the

permanent disability provisions of the contract to be effectuated and whether the appellee's action with regard to the determination were sufficient to terminate the partnership are for the jury and not for this court to decide on appeal. Did the parties intend that a partner agree to termination before the permanent disability provisions could be involved? Is the opinion of three or four doctors sufficient independent medical advice? How was the determination to be made? By telephone calls to the appellee? By letter? By affidavit? Did the parties intend Walker to have control over the termination so that if he committed suicide, as was done, before signing the "Retirement Agreement" he could avoid a prior determination of permanent disability? Was notice to Walker of his right under the agreement to purchase his life insurance policy from the partnership a prerequisite to termination?

The majority notes that whether or not there has been a determination of permanent disability is a question of fact but holds that it is uncontroverted that no such determination was made. On summary judgment all inferences are construed in favor of the opposing party and against the movant. When this is done here I believe that there remain jury questions as to the intent of the parties with regard to the determination of permanent disability and the sufficiency of appellee actions to terminate the partnership. The question of whether or not there was a determination of permanent disability prior to Walker's death which terminated the partnership is indeed a question of fact. But it is not uncontroverted and summary judgment is improper.

I would affirm the trial judge's denial of summary judgment, in that the denial results in the proper construction of the contract and that there remain genuine issues of material fact, to wit, the intent of the parties with regard to determination of permanent disability and adequacy of the appellee's actions to effectuate that intent by attempting to terminate the partnership, as well as the issue of punitive damages and attorney fees.

I am authorized to state that Judges Quillian and Evans concur in this dissent.